# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

WESTERN CASEWORK CORPORATION,

    Plaintiff,

COLLINS DEVELOPMENT, INC., et al.,

    Defendants.

_____

MURPHY ELECTRIC, INC., SECURETEC, INC.,

    Plaintiffs in Intervention,

COLLINS DEVELOPMENT, INC., et al.,

    Defendants

Case No. 2:09-CV-00945-KJD-RJJ

**ORDER**

    Currently pending before the Court is Defendant Federal Deposit Insurance Corporation's ("FDIC") Motion to Dismiss (#11) Murphy Electric Inc.'s ("Murphy") Intervening Complaint. Murphy filed a Response in opposition (#14), to which FDIC filed a Reply (#16). Also pending before the Court is FDIC's Motion to Dismiss (#12) Securetec, Inc.'s (also known as Nextgen)("Nextgen") Intervening Complaint. Nextgen filed a Response in opposition (#13), to

which FDIC filed a Reply (#15).[1]  The Court has considered both Motions, their Responses and Replies, and issues its ruling on both together herein.

**I. Background**

This action arises from a construction agreement entered into between Silver State Bank ("SSB") and Collins Development, Inc. ("Collins") for the purpose of building a new bank branch office on property located at 3307 Novat Street, Clark County, Nevada.  Collins served as the general contractor on the project.  Murphy was a subcontractor hired by Collins to perform electrical work on the project.  Nextgen was subcontracted to provide electronics, electrical materials, and surveillance equipment for the property.  On September 5, 2008, the Nevada Financial Institutions Division revoked SSB's charter, and the FDIC was appointed Receiver.  The branch building at issue was under construction at the time SSB was closed and the FDIC was appointed Receiver.

Prior to SSB's failure, during the course of July 2008, SSB received invoices from Collins for work completed, totaling $623,859.62.  In payment of those invoices, SSB deposited $623,859.62 into Collins' SSB checking account on July 31, 2008.  Rather than immediately paying its subcontractors, Collins left the funds in its SSB account.  Consequently, at the time of SSB's closing and the FDIC's appointment, the FDIC debited the funds in the account in excess of the $100,000 insured amount, resulting in a debit of approximately $413,514.69.

On or about October 9, 2008, the FDIC issued a Receiver's Certificate to Collins in the amount of $413,549.69.  This amount equaled the amount of the uninsured deposits that were left in Collins' account as of September 5, 2008, and debited from the account on that date.

---

[1] Also listed as a pending document before the Court is Murphy's Motion to Vacate (#19) which seeks that the Court vacate its Order Dismissing Case (#18). On June 30, 2010, Plaintiff Western Casework Corporation and Collins Development, Inc. filed a Stipulation (#17) to Dismiss.  The Court granted the Stipulation (see #18), and the docketing clerk mistakenly closed the case as to all parties.  Upon recognizing its error, the clerk's office re-opened the case as to all remaining parties.  Accordingly, because the case was re-opened per the Court's Order of July 14, 2010, the Court finds that Murphy's Motion to Vacate is moot.  Therefore, Intervening Plaintiff Murphy's Motion to Vacate (#19) is denied, as moot.

On January 14, 2009, Collins submitted a Proof of Claim to the FDIC in the amount of $258,878.29 for the balance of the work performed on the project prior to the Receivership. On May 5, 2009, the FDIC sent Collins a Notice of Allowance of Claim and issued a Receiver's Certificate in the amount of $258,878.29.[2]

Murphy alleges that it is still owed $66,653.06 for work it performed on the project prior to the FDIC's appointment as receiver on September 5, 2008.[3] (Compl. at ¶¶ 9-11.) Thus, on November 14, 2008, Murphy recorded a mechanics lien against the property. Murphy filed its Complaint in Intervention against the FDIC and SSB on May 8, 2009, alleging two causes of action against the FDIC for lien foreclosure and unjust enrichment.

Nextgen alleges it is still owed $101,270.00 for work it performed on the project prior to September 5, 2008. (Compl. ¶¶ 8–10). As a result, on October 24, 2008, Nextgen recorded a mechanics lien against the property in the amount of $101,270.00. Nextgen filed its Complaint in Intervention against the FDIC and SSB on April 23, 2009, also alleging two causes of action against the FDIC for lien foreclosure and unjust enrichment.

The FDIC seeks that the Court dismiss Murphy's and Nextgen's claims against the FDIC pursuant to Rule 12(b)(6). Specifically, the FDIC avers that both Murphy's and Nextgen's failure to

---

[2]Collins brought a separate action against SSB and the FDIC regarding its rights under the mechanics lien it filed on the property on November 12, 2008. The case was filed in state court and removed to federal court by the FDIC. See 2:09-cv-00427-GMN-RJJ (previously 2:09-cv-00427-RCJ-RJJ)("Collins case"). Judge Robert Clive Jones issued a ruling on competing motions for summary judgment in the Collins case subsequent to the Parties' filing of the instant Motion in this action. Judge Jones' Order (#30) was later altered and expanded (#45) to address the validity and rights of a party holding a mechanics lien under Nevada Statute—and particularly, when the rights of a lien holder attach prior to recordation. Ultimately, the Court held that Collins' rights as an existing lien holder attached under N.R.S. § 108.222 "as of the date the work was performed." (2:09-cv-00427-RCJ-RJJ (#40 at 7)). Though Collins could not enforce its lien prior to perfection, it could not be deprived of its rights as a lien holder. Judge Jones' initial order found that the FDIC had failed to recognize Collins' rights as a secured creditor, and the subsequent order expanded that holding. Specifically, the subsequent order held that because "[t]he clear goal of the mechanics lien statute [in Nevada] is to secure payment to those who perform labor or furnish material to improve the property of the owner," Collins had a legally protectable right that could not be ignored by the FDIC, and recordation of its mechanics lien was valid even though perfected subsequent to the FDIC's receivership appointment. (Id. at 9.)

[3]FDIC's Motion to Dismiss avers that Murphy is seeking $272,435.00. Murphy's Response clarifies that the unpaid amount of Murphy's base contract work, plus the amount of change orders, brings the total amount due and owing to $66, 653.06. (See #14 at 2; Compl. at ¶¶9–14).

satisfy the mandatory and exclusive claim procedures set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") 12 U.S.C. §§ 1821 et seq., render their claims against FDIC fatally defective. Plaintiffs, in opposition, aver that the FDIC failed to publish or mail notice as required under 12 U.S.C. § 1821(d)(3)(B), which would have notified them to submit their claims against SSB to the FDIC.[4]  Plaintiffs argue that the "notice" issue precludes dismissal of their claims here because the FDIC was required to comply with FIRREA's notice provisions before the FIRREA's adminsitrative claims process could be activated.

**II. Standard of Law for Motion to Dismiss**

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a Plaintiff's complaint for "failure to state a claim upon which relief can be granted." A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (internal citation omitted).

In Iqbal, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. Id. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. Id. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. Id. at 1950. A claim is facially

---

[4] Plaintiffs also argue that the FDIC's inclusion of material beyond the allegations of their Complaints require the Court to consider the Motions under Fed. R. Civ. P. 56.

plausible when the Plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." Id. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, Plaintiff's complaint must be dismissed. Twombly, 550 U.S. at 570.

**III. Discussion**

    **A. FIRREA**

Congress enacted FIRREA in 1989 in response to the nation's banking crisis. See Sharpe v. FDIC, 126 F.3d 1147, 1154 (9th Cir. 1997). FIRREA "allows the FDIC to act as receiver or conservator of a failed institution for the protection of depositors and creditors," id., establishing a scheme for overseeing and dealing with claims brought against the failed institution. Section 1821(d) of FIRREA outlines the powers and duties of the FDIC as conservator or receiver, authorizing the FDIC to, inter alia, determine and pay claims against the financial institution in accordance with the subsection's requirements. Subsections 1821(d)(3–6) set forth the procedures for the determination of claims, and § 1821(d)(11) establishes a distribution priority for claims to the financial institution's assets. Battista v. F.D.I.C., 195 F.3d 1113 (9th Cir. 1999).

The most considerable issue raised by the Motions here, surrounds the potential intersection of FIRREA's notice provisions found in 12 U.S.C. §§ 1821(d)(3) and 18(d)(3)(B), and FIRREA's statutory claim procedure found in 18 U.S.C. § 1821(d)(3) which bars "any involuntary lien to attach to property" after the FDIC has been appointed receiver. Plaintiffs Murphy and Nextgen allege that their lien foreclosure claims against the FDIC cannot be dismissed at this stage of the litigation because an issue of fact remains as to whether FDIC first provided them with appropriate notice.[5]

---

[5]FIRREA's notice provision 12 U.S.C. § 1821(d)(3)(C) sets forth specific guidelines requiring a receiver to publish and mail notice prior to the winding up of the affairs of a closed depository institution, including mailing notice to all of the depository institution's creditors.

Section 1825(b)(2) of FIRREA states:

When acting as a receiver, the following provisions shall apply with respect to the Corporation [the FDIC]:

> (2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

The Ninth Circuit has interpreted the plain language of this section to mean that "once the property belongs to the FDIC, that is, when the FDIC acts as receiver, no liens shall attach." In re County of Orange, 262 F.3d 1014, 1019–1020 (9th Cir. 2001).

Here, the FDIC was appointed as Receiver of SSB on September 5, 2008. Murphy did not record its mechanics lien until two months later, on November 14, 2008. Nextgen recorded its mechanics lien on October 24, 2008. Though at first blush it appears the liens at issue cannot be enforced pursuant to FIRREA, in applying Nevada State law, this Court has recently held otherwise.

The Court's recent holding in Collins (see infra n. 2), renders the issue here—the potential intersection of FIRREA's notice provisions and its statutory claim procedure barring the attachment of involuntary liens—irrelevant. It is undisputed that both Murphy and Nextgen began work on the project prior to the FDIC's appointment as receiver. Therefore, in accordance with the Court's ruling in Collins, the Court finds that Plaintiffs' rights as lien holders attached prior to September 5, 2008. See 2:09-cv-00427-RCJ-RJJ (citing N.R.S. § 108.226(4)(d) and Lehrer McGover Bovis, Inc. v. Bullock Insulation, Inc., 197 P.3d 1032, 1041 (Nev. 2008)). Accordingly, Plaintiffs' lien foreclosure claims should not be barred under Section 1825(b)(2), as they have received no "post-receivership improvement of position", that would foster attempts of creditors to "escape the payment hierarchy" by filing a lien against the property after the property has entered into receivership. Resolution Trust Corp. v. Cheshire Mgmt. Co., Inc., 18 F.3d 330, 334 (6th Cir. 1994). Therefore, as both Plaintiffs' liens attached prior to receivership, and both Plaintiffs have subsequently recorded their liens, the Court finds that the FDIC's Motion to Dismiss Plaintiffs' lien foreclosure claims must fail.

**B. Unjust Enrichment**

Defendant also seeks that the Court dismiss Plaintiff Murphy's fourth cause of action for unjust enrichment. Specifically, the FDIC alleges that because it paid Collins in full for the work done on the project, Murphy's unjust enrichment claim fails as a matter of law. The Court however, does not agree.

To effectively bring a claim for unjust enrichment, a Plaintiff must establish: (1) a benefit conferred upon a defendant by the plaintiff; (2) appreciation by the defendant of the benefit; and, acceptance and retention by the defendant of such benefit.

Section 1821(d)(10)(A) allows the FDIC, as receiver, to "pay creditor claims . . . in such manner and amounts as are authorized under this chapter." However, as discussed in Collins, the Court specifically held that due to the attachment of Collins' lien holder rights upon the commencement of work on the project, the FDIC should have recognized Collins as a secured lien holder. 2:09-cv-00427-RCJ-RJJ (#30). Thus, although the Ninth Circuit has held that the FDIC may use receiver's certificates as a manner of payment under FIRREA, Battista v. FDIC, 195 F.3d at 1116, Collins was entitled to compensation for its work as a secured party—as opposed to an unsecured claimant. See 12 U.S.C. §1821(d)(8)(A).

Therefore, although the FDIC gave Collins a Receiver's Certificate in the amount of $258,878.29, Plaintiffs here may be entitled to compensation for their work as a secured party. For this reason, the Court finds that Defendants' Motion to Dismiss Plaintiffs' breach of contract claim should be denied.

//
//
//
//
//

## IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant Federal Deposit Insurance Corporation's Motion to Dismiss (#11) Intervening Plaintiff Murphy Electric Inc.'s Complaint is **DENIED**.

**IT IS FURTHER ORDERED** that FDIC's Motion to Dismiss (#12) Intervening Plaintiff Securetec, Inc. is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Murphy Electric Inc.'s Motion to Vacate (#19) is **DENIED** as moot.

DATED this 17th day of March 2011.

Kent J. Dawson
United States District Judge